PRIMARY CARE PHYSICIANS GROUP, P.C., and Jean M. Cardin, M.D., Plaintiffs,

v.

James J. LEDBETTER, individually and in his capacity as the Commissioner of the Department of Human Resources; W. Scott Sprinkle, individually and in his capacity as Director of the Office of Regulatory Service, Division of Administrative Services, Georgia Department of Human Resources; and The Georgia Department of Human Resources, an agency of the State of Georgia, Defendants.

Civ. A. No. C 84–766A.

United States District Court, N.D. Georgia, Atlanta Division.

June 22, 1984.

Glover McGhee, G. Bland Byrne, III, Atlanta, Ga., Lee Calligaro, Barry S. Landsberg, and Craig Goodrich, Washington, D.C., for plaintiffs.

Mary Foil Russell, Atlanta, Ga., for defendants.

Randall L. Hughes, Atlanta, Ga., for Georgia Hosp. Ass'n.

## ORDER

VINING, District Judge.

In this action the plaintiffs challenge the constitutionality of legislation passed by the Georgia legislature, O.C.G.A. § 31–7–1, *et seq.*, and regulations promulgated by the Georgia Department of Human Resources. Georgia Rules & Regulations § 290–5–42.-01 *et seq.* Essentially, the plaintiffs argue that the legislation violates the equal protection clause of the Fourteenth Amendment, serves no valid public purpose, and was passed by the Georgia legislature merely to protect the financial interests of and monopoly held by physicians and private hospitals in the rendering of health care services.

Plaintiff Primary Care Physicians Group is a chain of so-called "freestanding emergency care clinics" (FECC) which provide routine and minor emergency medical care to individuals. Frequently, FECCs such as Primary Care provide this medical service at a lower cost to the patient and, for patient convenience, are open seven days a week, 12–14 hours each day. Shortly after FECCs began operating in Georgia the Georgia legislature enacted the FECC statute at issue in this case. Although the statute placed severe restrictions on the operation of FECCs, the law expressly exempted from coverage private physicians' offices in which a patient may receive the same medical services as he may receive at an FECC. The plaintiff asserts that the statute is discriminatory and that the legislature in specifically exempting private physicians' offices from the statute violated the plaintiffs' equal protection rights.

In an effort to demonstrate that the legislation was passed for a constitutionally improper purpose, the plaintiff has subpoenaed from Georgia Hospital Association (GHA), a nonparty, all documents related to GHA's lobbying efforts in support of the legislation. GHA is a trade association

composed of member hospitals and is engaged in lobbying on behalf of its members before various governmental bodies which regulate the activities of its members. Pursuant to Fed.R.Civ.P. 26(c), GHA has moved to quash the subpoena and pursuant to Fed.R.Civ.P. 45(b), GHA has moved for a protective order.

 Legislation involving neither a suspect class nor a fundamental right carries with it a strong presumption of constitutionality. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976); *Schilb v. Kuebel,* 404 U.S. 357, 364, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971). Consistent with this presumption, the party challenging the statute bears a heavy burden of showing that the statute is unconstitutional. *Seoane v. Ortho Pharmaceuticals, Inc.,* 660 F.2d 146, 150 (5th Cir.1981). When examining such a challenge, the court need determine only whether a proper or rational purpose existed for the legislature's actions. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). And the specific question the court must ask is whether "any state of facts reasonably can be conceived that [will] sustain" the legislation. *Allied Stores of Ohio v. Bowers,* 358 U.S. 522, 528, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959). Thus, the court need not determine whether the actual purpose for which the statute was enacted was proper or rational, as long as a rational purpose *may have existed* which would have legitimately justified the legislation. *See, e.g., O'Brien v. United States,* 376 F.2d 538, 540 n. 6 (1st Cir.1967) (in striking down the statute the court did not rely upon the fact that the legislative history suggested an improper purpose for the statute's passage, but merely noted the absence of any proper purpose), *rev'd on other grounds,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

*Apel v. Murphy,* 70 F.R.D. 651 (D.R.I. 1976), supports the rationale offered above. In that case the plaintiffs, a group of fishermen, sought to enjoin the enforcement of a statute enacted by the Rhodes Island legislature and regulations promulgated by the Director of the Rhode Island Department of Natural Resources. The stated purpose of the statute was to promote conservation. The plaintiffs subpoenaed documents from local reporters to establish that the stated purpose was a mere pretext for the legislation and that the legislation was designed to discriminate against out-of-state fishermen. The reporters moved to quash the subpoena, and the court granted their motion. After stating that the ultimate question before the court was whether promoting conservation was a rational basis for the law, the court held that any illegitimate reason the officials and legislature may have had for the passage of the law was irrelevant to the determination of whether a valid purpose for the statute existed. *Id.* at 655.

In this case the court's task is to determine whether the information the plaintiffs seek from GHA is relevant to answering the question of whether a valid purpose existed for the passage of the statute. To answer this question the court will assume the scenario which the plaintiffs seek to prove through the GHA documents:[1] (1) GHA conducted an intensive lobbying effort on behalf of its member hospitals to pass the legislation; (2) the legislation was directly targeted at groups and organizations such as Primary Care; (3) the legislation actually discriminated against the plaintiffs and was designed to protect the economic interests of the hospitals and private physicians by protecting the monopoly which private physicians and hospitals enjoy in the providing of routine and minor emergency health care services; and (4) the Georgia legislature passed the challenged statute for the primary purpose of preserving and protecting the economic interests of hospitals and private physicians.

 Even if all these assumptions were in fact true, they would be irrelevant to the question the court must eventually decide;

---

**1.** This is not to suggest, however, that the court believes this scenerio or that sufficient evidence exists from which the scenerio may be created.

that is, whether there is any conceivable purpose which may justify the statute. In other words, even if the plaintiffs can prove that the legislature's reason for passing the statute was improper, the constitutionality of the statute would still be upheld if there was another, legitimate basis for the legislation. Accordingly, the court determines that the information the plaintiffs seek from GHA is irrelevant and not calculated to lead to the discovery of admissible evidence. The court notes, however, that if the *only* purpose for the statute was to protect the economic interests of private physicians and hospitals by insuring the physicians' and hospitals' virtual monopoly in the health care service field and if the court cannot ascertain any conceivable purpose justifying the statute, the statute would violate the equal protection clause of the Fourteenth Amendment.

Accordingly, Georgia Hospital Association's motion to quash the subpoena and motion for a protective order are GRANTED.